### TITLE TO "JOURNAL ISLAND."

Common Pleas Court of Franklin County.

STATE OF OHIO V. JAMES EDGAR BUTLER.[*]

Decided, November 4, 1921.

*Adverse Possession—Island in Canal Reservoir Claimed under Lease*
*from the State—Actual and Continuous Possession for Required*
*Time not Shown by Lessees—Title Quieted in Claimants under a*
*Government Patent.*

Possession by lessees from the state of "Journal Island," a tract of
land in the old Licking canal reservoir, now known as Buckeye
Lake, was not of such a character as to cause title to the said
island to ripen in the lessees by reason of adverse possession. On
the contrary the claim to the island, based on a patent issued by
the United States Government in 1857, constitutes the legal and
valid title thereto.

---

[*] Judgment affirmed by the Court of Appeals, March 2, 1922; error not
prosecuted to the Supreme Court.

*John G. Price,* Attorney General, *John M Parks* and *William J. Myer,* special counsel, for plaintiff.

*J. E. Butler,* for defendant.

SOWERS, J.

The petition alleges through the Attorney General, John G. Price, that it is the owner and is in actual possession of certain property therein described, and that the defendant claims an estate or interest in said real estate adverse to the plaintiff and prays that the defendant be compelled to disclose his said claim and that the same may be declared null and void and plaintiff's title quieted against the claim of defendant.

The defendant for answer denies that the plaintiff is the owner of said property, and by way of cross-petition alleges that he is and has been in actual possession since March 2nd, 1920, and that since said date he has been the owner of said property both in law and in equity. The defendant further alleges that the plaintiff never obtained any title or interest in said premises from the rightful owner thereof and that the plaintiff has not now and never had any title or estate in said property; and defendant asks that his title be declared to be good both in law and in equity.

The case is submitted to the court upon an agreed statement of facts, with complete and able briefs by counsel for the parties. The statement of facts, in substance, recites: that a patent was granted to John Harris Jr., of Franklin county, Ohio, by the government of the United States on September 1st, 1857, in which was included the premises in question; that on or about the 12th day of October, 1885, the said Harris died intestate and his sister, Mary Mather, of Columbus, Ohio, inherited said property as his only heir at law; that said Mary Mather died testate on or about July 15th, 1888, and by her will said property was devised to George Cotton Mather, who devised it to his widow, Katharine A. Mather. The said Katharine A. Mather conveyed the premises by deed to this defendant on March 2, 1920; that no other instruments were ever executed by John Harris, Jr., or any one claiming under or through him, except as above stated, all of which have been properly recorded.

The statement further recites that one and one half quarter sections contained in the patent to John Harris Jr., are mostly

covered by the Licking Reservoir, now known as Buckeye Lake, but that the property in question has never been covered by the waters of the Reservoir and that this island, known as "Journal Island," is occupied under a lease from the state of Ohio; that the state of Ohio built the reservoir in 1833, and that it appropriated the land necessary for its construction by taking possession of it for canal purpose, but it did not obtain title to the island by grants from the government of the United States, private owners or condemnation proceedings, and the only possession which the state has ever had is such possession as may be due to the fact the land in question is within the limits and surrounded by said reservoir, except such possession as hereafter appears, and that the land in question was never listed by anyone for taxation nor were any taxes ever paid thereon until the deed to the defendant.

The statement further recites that on March 13, 1894, the state of Ohio executed a lease covering "Journal Island" to one W. C. Wells for a period of fifteen years, but no building was erected thereon during said period; that Wells cleared the high ground and planted a peach orchard thereon and for sometime cultivated the ground between the rows of trees; that said Wells and various others used the island more or less regularly for a fishing camp; that upon the expiration of the Wells lease, the board of public works of the state had under consideration the advisability of converting the island into a public park but no funds being available, it was leased to Geo. C. Urlin on July 9th, 1909, which lease was subsequently transferred to Robert F. Wolfe, the present occupant, who erected a cottage thereon in the autumn of 1909, which was the first building ever erected on said premises; that the Urlin lease was voluntarily surrendered on December 12, 1918, when a new lease was executed to Robert F. Wolfe; these leases were properly recorded and that during the interval between the Wells and Urlin leases the state, in keeping the peace of Buckeye Lake, also kept the peace on "Journal Island;" the state and its lessee in 1919, jointly constructed a stone and concrete retaining wall along the north and west shores of said Island and that neither Katharine A. Mather nor any one claiming title thereto asserted ownership in and to said island or objected to the construction of said wall.

Certain exhibits are attached to the agreed statement of facts showing the chain of title to the property in defendant, together with a map of Buckeye Lake.

The plaintiff is claiming the title to said property by adverse possession, whereas the defendant is relying upon his title to the property by and through the original grant from the United States government.

This island was no part of the canal system of the state and did not pass to the state by the appropriation of certain land for the reservoir, which land and the water thereon became vested in the state. The island was never submerged by the water of the reservoir and it is conceded that if the state has title, it is through adverse possession only, and not by any appropriation of land for canal purposes. The fee simple in the island was in the United States until September 1st, 1857, when a patent was issued to John Harris Jr., and from that time to the present, there is an unbroken chain in the legal title to the present owner, who is the defendant in this suit. No dominion was exercised by the plaintiff over the island until the lease was executed by the state to W. C. Wells on March 13th, 1894.

It is agreed by counsel for the state and for the defendant that to obtain title by adverse possession, that such possession must be: 1. actual; 2. continuous; 3. open and notorious; 4. exclusive: 5. adverse and hostile.

It is apparent from an examination of the facts as submitted by counsel that the state has been in such possession since the lease to George C. Urlin on July 9th, 1909, when shortly thereafter a cottage was erected on said island, which cottage remains on the island at this time. No doubt this building is in the nature of a permanent dwelling and is notice to all persons of its use and occupancy by Mr. Wolfe, who erected it. The court is of the opinion that since the execution of the lease by the state to Mr. Urlin that the adverse possession meets all the rquirements of the law, namely, that it has been actual, continuous, open and notorious, exclusive and adverse or hostile.

Whether or not such possession existed prior to the execution of the lease of July 9th, 1909, is a much more difficult question. The only paragraph in the statement of facts upon which a judgment can be founded in number twelve, which is as follows:

"12. On march 13, 1894, the State of Ohio executed a lease covering Journal Island to W. C. Wells of Newark, Ohio, for a term of fifteen years. During this fifteen year period, no building was erected on Journal Island. W. C. Wells shortly after obtaining his lease for said Journal Island, cleared the high ground on the north side of the same and planted a peach orchard thereon, and for several years thereafter cultivated the space between the rows of trees by planting potatoes thereon. For many years he gathered crops of peaches from said orchard. During said fifteen year period while Wells held said island under the lease from the state, said Wells and various others used the island more or less regularly for a fishing camp. His lease expired March 13, 1909."

It is true that this statement must be construed along with the others, but a proper interpretation of this cardinal one is conclusive in a proper decision of the case. The lease to Wells was executed under color of title; and the questions arise, was his occupancy of such a character and the dominion of the state over the island during the interval between the Wells and Urlin leases sufficient to support a title by adverse possession? It is proper to consider the property in question, the purposes for which it might be used, its utility, its location and its adaptability to supply the wants and requirements of the one who occupied it.

Several acres of land located in a body of water such as this might be used continuously for a variety of purposes throughout many months of the year if not the entire time. It was never submerged and a permanent dwelling might have been erected on the land, such as exists at the present time, but no building was ever erected until the present one in 1909. Wells cultivated, at least, a part of the land for many years but for how many years the record is silent. During the period of this lease "said Wells and various others used the island more or less regularly for a fishing camp." This statement is so indefinite that it is impossible to determine whether the "various others" were friends of Wells and occupied the premises by and with his consent or as trespassers, or adversely to him and to the lessor or the legal owner. It does not appear that Wells' occupancy was actual and continuous during the period of his lease, which are essentials to adverse possession, nor does it appear that his possession was exclusive, but for a part of the time at least, was only one in

name if it existed at all.  His occupancy was an intermittent tenancy, and certainly was not continuous in contemplation of law. The only possession or dominion which the state ever exercised over the property was through its tenants, and in this respect it can only claim title through this source. being bound by their condition and the mode by which they held their estate.

It is fair to infer that during a large part of the time covered by the Well's lease the island was not occupied at all, and there was nothing in the tenancy under this lease most of the time, to indicate to the owner that the property was being adversely used or held.  It is a well established principle of law that where an adverse occupant abandons possession before the statutory period has run that he loses all rights acquired by his adverse holding, and the rightful owner by such abandonment is placed in the same possession in all respects as he was before the intrusion took place.      The lease in question expired on March 13, 1909.  No other lease was executed until July 9, 1909. What the board of public works intended to do with the property, can in no wise affect the legal title; it is what it did do, which must control.  The fact that the state "kept the peace" on the island, is a duty and a function for the state throughout its territorial domain, and again this does not affect the legal title; nor does the fact that it was never listed for taxation.

The court has reached the conclusion that the plaintiff's occupancy, up until the Urlin lease, did not meet the essential elements required by law to establish adverse possession.

The briefs of counsel and the authorities cited therein, have been examined with great care, and the court is of the opinion that the great weight of authority favors this view.  It is founded upon well established principles of law, some of which follow, in which numerous decisions are cited by the authors in their support.

"Where one enters upon the land of another without claim or right, he is a trespasser, and his possession, no matter for what duration, can never ripen into a title.

"A possession, to be adverse, must also be continued for the whole period required to bar an action for recovery under the statute of limitations.

"The possession, to be adverse, must be something more than temporary occupancy, as occasional acts of dominion over the land, although extended over the statutory period, will not constitute continuous possession. When the possession is interrupted, the running of the statute is stopped, and a subsequent return to possession will not avail. The running of the statute will only begin from the date of the return.

"Adverse possession may be shown in various ways. Among these may be mentioned residence on the land, the erection of buildings and other structures, or the actual inclosure of the land with a fence. None of these acts, however, are absolutely necessary, and in some cases they may be impossible from the character of the property."

Thompson Title to Real Property. Sec. 687. See also Cyc. vol. 1, pages 981 *et seq*. Tiffany on Real Property, vol. 2, pp. 1924 *et seq*. Corpus, vol. 2, p. 75.

Counsel for defendant relies upon *State* v. *Fenn et al*, 10 O. N. P. (N.S.), p. 326, as most persuasive in the instant case. The Fenn case is clearly distinguishable from the case at bar, but some of the principles stated by the court in that case are relied upon here.

Counsel for the defendant also argue at some length upon the question of the right of the state to hold land adversely under the constitutional limitation. No such question is involved in this case, and the court has assumed that such right exists, consideraing the question of adverse possession upon its merits as presented by the agreed statement of facts, and finds that the state has not had such possession of the island for a sufficient length of time to have it quieted against this defendant.

Judgment for defendant.